Reed Zars (Wyo. Bar No. 6-3224)
Attorney at Law
910 Kearney Street
Laramie, Wyoming 82070
307-745-7979
307-745-7999 (Fax)

John Barth
Attorney at Law
P.O. Box 409
Hygiene, CO 80533
(303) 774-8868
admitted *pro hac vice*

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | | |
|---|---|---|
| SIERRA CLUB and WYOMING OUTDOOR COUNCIL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  07-CV-042-J |
| | ) | |
| PACIFICORP | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' COMBINED MOTION AND MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
ON THE FIRST AND SECOND CAUSES OF ACTION
TO ESTABLISH
DEFENDANT'S LIABILITY FOR OPACITY VIOLATIONS**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiffs Sierra Club and Wyoming Outdoor Council ("plaintiffs") respectfully submit this combined motion for partial summary judgment, and memorandum and exhibits in support of such motion, to establish defendant PacifiCorp's liability for thousands of opacity air pollution violations at its Jim Bridger Power Plant in Wyoming.

## I. INTRODUCTION

Plaintiffs seek partial summary judgment on the first and second causes of action in their complaint to establish that PacifiCorp has violated, and continues to violate, its federally enforceable air pollution permit and the Clean Air Act, 42 U.S.C. § 7401 et seq., by discharging pollutants from its Jim Bridger Power Plant ("Jim Bridger") in Sweetwater County, Wyoming, in excess of established permit limits.

In particular, PacifiCorp's federally enforceable air pollution permits prohibit the discharge of pollutants from Units 1-3 at Jim Bridger with an opacity (or pollution density) greater than 20 percent, and from Unit 4 at Jim Bridger with an opacity greater than 30 percent.

Plaintiffs' first cause of action alleges that PacifiCorp is violating the 20 percent opacity limit at Units 1-3. According to PacifiCorp's own continuous stack opacity monitors, PacifiCorp has violated the 20 percent opacity limit applicable to Units 1-3 at least 8,767 times between October 1, 2001 and September 30, 2006. Plaintiffs' second cause of action alleges that PacifiCorp is violating the 30 percent opacity limit at Unit 4.

Similarly, PacifiCorp's opacity monitor at Unit 4 also shows the company has violated the 30 percent opacity limit applicable to Unit 4 at least 523 times between October 1, 2001 and September 30, 2006.

Because there is no dispute as to any material fact regarding such violations, partial summary judgment to establish PacifiCorp's violations as alleged in plaintiffs' first and second causes of action should issue forthwith.

If this Court grants partial summary judgment to plaintiffs as to these violations, the issues remaining to be decided with respect to the first and second causes of action in the complaint would be the nature and timing of injunctive relief and the assessment of a civil penalty payable to the government.[1]

## II.  PROCEDURAL BACKGROUND

On November 15, 2006, pursuant to the citizen suit 60-day notice provision of the federal Clean Air Act at 42 U.S.C. § 7604(b)(1)(a), plaintiffs notified in writing the Administrator of the Environmental Protection Agency ("EPA"), the Wyoming Department of Environmental Quality ("DEQ"), and defendant PacifiCorp of alleged air pollution emission violations at Jim Bridger and plaintiffs' intent to sue.  **Exhibit A.**

After the passage of more than 60 days from the date of its notice letter, plaintiffs filed their complaint in this matter on February 21, 2007.  On April 2, 2007, PacifiCorp

---

[1]  Plaintiffs have filed a separate motion for partial summary judgment to establish their standing to bring this enforcement action.  Plaintiffs are not filing for partial summary judgment on their third cause of action at this time.

answered the complaint. PacifiCorp's answer admits that PacifiCorp received plaintiffs' November 15, 2006 notice letter, Answer, ¶ 4, and that more than 60 days passed between the postmark date of the notice letter and the filing date of plaintiffs' complaint, Answer, ¶ 5.

Pursuant to the May 11, 2007 scheduling order in this matter, this case has been determined to be non-complex. By order dated July 30, 2007, this matter was bifurcated into liability and remedy phases. The deadline for filing dispositive motions in the liability phase is October 15, 2007. Trial on liability issues, if necessary, is set for April 21, 2008.

### III. FACTS

**Statement of Undisputed Material Facts**

1.    PacifiCorp's Jim Bridger plant is located at Point of Rocks, Wyoming, approximately twenty-six miles east of Rock Springs, Wyoming. Jim Bridger consists of four coal-fired electrical generating units. Units 1-3 have nameplate capacities of 578 megawatts ("MW") each and Unit 4 has a nameplate capacity of 561 MW. Answer, ¶¶13 & 14.

2.    PacifiCorp is the operator and majority owner of Jim Bridger. Answer, ¶12.

3.    The discharge of air pollutants from Jim Bridger is regulated by air pollution "operating permits" issued by DEQ. PacifiCorp is the named permittee in DEQ

Operating Permit No. 30-120-2 for Jim Bridger dated October 29, 2001.  Answer, ¶12;

**Exhibit B**.  PacifiCorp is the named permittee in DEQ Operating Permit No. 31-120-1

for Jim Bridger dated June 14, 2004.  Answer, ¶12; **Exhibit C**.  Finally, PacifiCorp is the

named permittee in DEQ Operating Permit No. 3-1-120-2 for Jim Bridger dated

September 6, 2005.  Answer, ¶12; **Exhibit D**.  Each of the operating permits referenced

above are collectively referred to herein as the "Operating Permits."  PacifiCorp did not

appeal any of the Operating Permits after each was issued by DEQ.  Answer, ¶32.

4.      Pursuant to each of the Operating Permits, "[a]ll terms and conditions of

the permit[s], except those designated as not federally enforceable, are enforceable by

EPA and citizens under the Act."  Answer, ¶33; **Exhibits B, C and D**, p.1.  PacifiCorp

has responsibility for maintaining compliance with Jim Bridger's Operating Permits.

Answer, ¶12.

5.      Condition (F6)(a)(iii) in PacifiCorp's Operating Permits prohibits the

emission of visible pollutants from Jim Bridger Units 1-3 that exhibit greater than 20

percent opacity on a six-minute average basis, except that one two-minute reading per

hour may be no more than 40 percent opacity.  **Exhibits B, C and D**, p. 6.

6.      The 20 percent opacity limit applicable to Jim Bridger Units 1-3 has

applied at all times between October 1, 2001 and the date of this motion.  **Exhibits B, C
and D**, p. 1.

7.      Condition (F6)(c) in PacifiCorp's Operating Permits prohibits the

emission of visible pollutants from the outlet of the electrostatic precipitator at Jim

Bridger Unit 4 in excess of 30 percent opacity on an hourly average basis.  **Exhibits B, C**

**and D**, pp 6-7.

8.     The 30 percent opacity limit applicable to Jim Bridger Unit 4 has applied

at all times between October 1, 2001 and the date of this motion.  **Exhibits B, C and D**.

9.     The opacity of emissions from Jim Bridger Units 1-4 is  monitored and

recorded on a continuous basis by continuous opacity monitors (COMs).[2]  Answer, ¶47.

The opacity data from COMs in the stacks at Jim Bridger Units 1-3 is reported in six-

minute averages; the opacity data from the COM at the outlet of the electrostatic

precipitator at Jim Bridger Unit 4 is reported in one-hour averages.  Answer, ¶47.

10.     The COMs that measure the opacity of emissions from Jim Bridger are

located and certified consistent with the requirements found at 40 C.F.R. § 60, App. B,

Performance Specification 1.  Answer, ¶ 49.

11.     The opacity data from the COMs are retained in a computer at Jim

Bridger.  Answer, ¶ 50.

12.     Pacificorp submits quarterly excess emission reports ("EERs") to DEQ

---

**2**  A COM scientifically determines opacity by passing a beam of light through the
exhaust from one side of the smokestack to the other.  The less light that makes it to a
sensor on the other side, the greater the opacity of emissions.  40 C.F.R. Part 60, App. B,
Spec. 1.  According to EPA, "[t]ransparent stack emissions that do not attenuate light will
have an opacity of zero percent.  Opaque stack emissions that attenuate all of the visible
light will have a transmittance of zero percent or an opacity of 100 percent."  *Id.*

that are required to identify, for each calendar quarter, all periods of time in which the opacity of pollution discharged by Jim Bridger exceeded the applicable opacity limit in the Operating Permits.  Pacificorp admits the EERs speak for themselves.  Answer, ¶54.

13.     Data from PacifiCorp's own COMs at Jim Bridger, as reported in the EERs, show that emissions from Units 1-3 have exceeded 20 percent opacity on a six-minute average, PacifiCorp's permit limit for these units, every calendar quarter over the last five years.  **Exhibit E**.  Data from PacifiCorp's COMs as reported in the EERs also show that emissions from Unit 4 regularly exceed 30 percent on an hourly average, PacifiCorp's permit limit applicable to Unit 4.  *Id*.

14.     Emissions from Jim Bridger Units 1-4 have exceeded the applicable opacity permit limits thousands of times in the last five years.  **Exhibit E**; Jim Bridger Units 1-3 and Unit 4 Opacity Violation Summaries, **Exhibits F and G**.

15.     PacifiCorp has certified as true, accurate, and complete the opacity data set forth in its EERs.  For example, see **Exhibit E**, Fourth Quarter 2001 Report, p. 3.

16.     From October 1, 2001 through September 30, 2006, PacifiCorp exceeded the 20 percent, six-minute average opacity limit applicable to Units 1-3 at least 8,767 times.  Jim Bridger Units 1-3 Opacity Violation Summary, **Exhibit F**.

17.     From October 1, 2001 through September 30, 2006, PacifiCorp exceeded the 30 percent, one-hour average opacity limit applicable to Unit 4 at least 533 times. Jim Bridger Unit 4 Opacity Violation Summary, **Exhibit G**.

18.     "Emergency" and "Abnormal Conditions and Equipment Malfunction" are the only exceptions to the opacity limits applicable to Units 1-4 set forth in PacifiCorp's Operating Permits.  Conditions (G17) and (G21), **Exhibit B**, p. 24; **Exhibit C**, p. 25, **Exhibit D**, pp. 26-27.

19.     To establish the affirmative defense of an emergency, abnormal condition or equipment malfunction, PacifiCorp must demonstrate that it provided notice to DEQ of such an event within 24 hours.  Conditions (G17) and (G21), **Exhibit B**, p. 24; **Exhibit C**, p. 25, **Exhibit D**, pp. 26-27.

20.     During the period from October 1, 2001 through September 30, 2006, PacifiCorp did not provide notice to DEQ that any of its excess opacity periods were caused by an emergency, abnormal condition or equipment malfunction.  **Exhibit E**.  In fact, in each of its EERs for this period, for each unit, PacifiCorp affirmatively stated that "0" minutes of "excess emission events" were "due to emergency/abnormal operations." **Exhibit E**.

21.     PacifiCorp's Operating Permits do not describe an exception to the 20 percent opacity limit applicable to Jim Bridger Units 1-3 for any of the following conditions: (1) chemical composition of the flyash producing high resistivity in the ash, (2) one precipitator gas path out of service for maintenance, (3) temporary boiler draft excursion caused by unit load change, (4) boiler draft excursions caused by adjusting pulverizers, fans, sootblowers, and air horns, (5) flue gas SO3 conditioning system out of

service, (6) operating precipitator rappers continuously to remove ash deposits, (7) gas

path field or fields out of service for maintenance, (8) opacity spikes, cause unknown, (9)

draft excursion caused by ash collecting system, (10) air frozen causing poor atomization

in fuel oil burners, (11) boiler chemical clean, turbine off-line, ignitors on for

temperature control during boiler clean, (12) unit in startup mode, boiler draft system on,

oil fuel firing, (13) unit in shutdown mode, draft system on for boiler cool down, no fuel

firing, precipitator offline, (14) temporary boiler draft excursion caused by gas path being

put in, or taken out of service, (15) loss of power to precipitator controls, (16) low stack

temperature, suspect moisture interference probable cause, and (17) suspect oil coating of

precipitator internals from boiler startup, rapping precipitator to remove coating and

buildup.  Answer, ¶ 39; **Exhibits B, C and D**.

   22.  PacifiCorp's Operating Permits do not describe an exception to the 30

percent opacity limit applicable to Jim Bridger Unit 4 for any of the following

conditions:  (1) chemical composition of the flyash producing high resistivity in the ash,

(2) one precipitator gas path out of service for maintenance, (3) temporary boiler draft

excursion caused by unit load change, (4) boiler draft excursions caused by adjusting

pulverizers, fans, sootblowers, and air horns, (5) flue gas SO3 conditioning system out of

service, (6) operating precipitator rappers continuously to remove ash deposits, (7) gas

path field or fields out of service for maintenance, (8) opacity spikes, cause unknown, (9)

draft excursion caused by ash collecting system, (10) air frozen causing poor atomization

in fuel oil burners, (11) boiler chemical clean, turbine off-line, ignitors on for temperature control during boiler clean, (12) unit in startup mode, boiler draft system on, oil fuel firing, (13) unit in shutdown mode, draft system on for boiler cool down, no fuel firing, precipitator offline, (14) temporary boiler draft excursion caused by gas path being put in, or taken out of service, (15) loss of power to precipitator controls, (16) low stack temperature, suspect moisture interference probable cause, and (17) suspect oil coating of precipitator internals from boiler startup, rapping precipitator to remove coating and buildup.  Answer, ¶ 44; **Exhibits B, C and D**.

23.    The opacity readings at Jim Bridger have been recorded at well over twice the legal limit.  For example, on March 15, 2006, PacifiCorp reported that the opacity of emissions from Unit 2 exceeded 57 percent.  **Exhibit E**, 2006, First Quarter.  In speed limit terms, this would be equivalent to driving over 200 miles per hour on Interstate 80.

## IV.  ARGUMENT

Partial summary judgment should be entered in favor of plaintiffs on their first and second causes of action in their complaint because there is no reasonable dispute over the fact that PacifiCorp has discharged pollution into the air of Wyoming in excess of the opacity limits and thus violated its Operating Permits and the Clean Air Act.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law."  Rule 56(c).  *See  also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *White v. York Int'l Corp.*,

45 F.3d 357, 360 (10th Cir. 1995); *Yumukoglu v. Provident Life & Accident Ins. Co.*, 131

F. Supp. 2d 1215, 1221 (D.N.M. 2001).  Summary judgment regarding violations of the

Clean Air Act has been found to be particularly appropriate where a defendant's own air

pollution monitoring results demonstrate liability.  *St. Bernard Citizens for Envt'l*

*Quality, et al. v. Chalmette Refining, L.L.C.*, 354 F.Supp. 2d 697, 706-707 (E.D. La.

2005); *Sierra Club v. Public Service Company of Colorado, Inc.*, 894 F. Supp. 1455 (D.

Colo. 1995);  *Friends of the Earth v. Potomac Electric Power Company*, 419 F. Supp.

528 (D.D.C. 1976).

A.     **Partial Summary Judgment Should Be Granted to Establish
       PacifiCorp's Liability for Opacity Violations at Units 1-4.**

As demonstrated below, partial summary judgment should be granted to establish

the elements of plaintiffs' affirmative case with respect to PacifiCorp's liability for

violations alleged in the first and second causes of action.  These elements are: (1) the

opacity limit in PacifiCorp's Operating Permits for emissions from Units 1, 2 and 3 is 20

percent on a six-minute average, and for Unit 4 the opacity limit is 30 percent on a one-

hour average, (2) compliance with the applicable opacity limits in PacifiCorp's Operating

Permits is determined by PacifiCorp's continuous opacity monitors, and (3) PacifiCorp's

continuous opacity monitor data show thousands of violations of the 20 and 30 percent

limits.

1.    Plaintiffs Are Entitled To Partial Summary Judgment To
      Establish That the Opacity of Pollution from Jim Bridger
      Units 1, 2 and 3 Shall Not be Greater than 20 Percent, and
      from Unit 4, Opacity Shall Not be Greater than 30 Percent.

First, partial summary judgment should be granted to establish that condition

(F6)(a)(iii) in each of PacifiCorp's Operating Permits prohibits the emission of visible

pollutants from the smoke stacks of Jim Bridger Units 1, 2 and 3 that exhibit greater than

20 percent opacity.  **Exhibits B, C and D**, p. 6.  According to condition (F6)(a)(iii):

> Emissions from boilers 1, 2 and 3 (Sources 1 through 3) shall be limited to
> . . . no greater than 20 percent opacity of visible emissions, except that 40
> percent opacity shall be permitted for not more than two minutes in any
> hour.[3]

*Id.*

Partial summary judgment should also be granted to establish that condition

(F6)(c) in each of PacifiCorp's Operating Permits prohibits PacifiCorp from discharging

from Jim Bridger Unit 4 pollution with an opacity greater than 30 percent on an hourly

average as measured at the outlet of the electrostatic precipitator.  **Exhibit B**, p. 6;

**Exhibit C**, p. 7; **Exhibit D**, p. 6.  According to condition (F6)(c):

> Emissions from the outlet of the boiler 4 electrostatic precipitator shall not

---

[3]  The burden of demonstrating any application of the two-minute, 40 percent
opacity exception to violations of the 20 percent opacity limit would of course fall on
PacifiCorp.  This is because the burden of proof rests on the party who "claims the
benefits of an exception to the prohibition of a statute."  *United States v. First City
National Bank*, 386 U.S. 361, 366 (1967).  It is noteworthy that none of PacifiCorp's
EERs provide two-minute opacity data, and none of PacifiCorp's reports state any of its
excess emissions are excused as a result of such an exception.  **Exhibit E**.

> exceed an hourly opacity standard of 30 percent as measured by a
> continuous opacity monitoring system.

*Id*.

Pursuant to the Clean Air Act at 42 U.S.C. § 7661a(a), "[a]fter the effective date of any permit program approved or promulgated under this subchapter, it shall be unlawful for any person to violate any requirement of a permit issued under this subchapter." Wyoming's operating permit program was approved by EPA on February 22, 1999. 64 Fed. Reg. 8523 (Feb. 22, 1999).

According to PacifiCorp's Operating Permits, "[a]ll terms and conditions of the permit, except those designated as not federally enforceable, are enforceable by EPA and citizens under the Act." **Exhibits B, C and D,** p. 1. Because the 20 and 30 percent opacity limits in PacifiCorp's Operating Permits are an "emission standard or limitation" as defined in the Clean Air Act at 42 U.S.C §7604(f)(1), (3), and (4), they can be enforced by plaintiffs in this action pursuant to the Clean Air Act's citizen suit provision at 42 U.S.C. § 7604(a)(1).

As shown below, because there is no genuine dispute of material fact that PacifiCorp is required by its permit to monitor the opacity of its emissions, and because PacifiCorp's own evidence shows thousands of violations of the opacity limits at Jim Bridger, partial summary judgment to establish PacifiCorp's liability for such violations should be granted.

2.      Plaintiffs Are Entitled To Partial Summary Judgment to Establish that
        Opacity Data from PacifiCorp's Continuous Opacity Monitors May Be
        Used to Establish Violations of the Applicable Opacity Limits at Jim
        Bridger.

Second, partial summary judgment should be granted to establish that

PacifiCorp's Operating Permits require PacifiCorp to monitor the opacity of its

emissions, and that PacifiCorp's monitor data is to be used to establish violations.

Pursuant to condition (F16)(d) in PacifiCorp's operating permit No. 30-120-2,

after October 1, 2001, PacifiCorp was required to monitor the opacity of emissions

discharged from the stacks of Units 1-3 on a continuous basis.  **Exhibit B**, p. 10.  The

requirement to monitor the opacity of emissions from the stacks of Units 1-3 was carried

forward in operating permits 31-120-1 and 3-1-120-2 in condition (F19)(d)(i).  **Exhibits**

**C and D**, p. 10.

Pursuant to conditions (F6)(c) and (F16)(e) in PacifiCorp's operating permit 30-

120-2, PacifiCorp is required to monitor the opacity of emissions discharged from the

outlet of the electrostatic precipitator at Jim Bridger Unit 4 on a continuous basis.

**Exhibit B**, pp. 6-7; 10.  The requirement to monitor the opacity of emissions discharged

from the outlet of the electrostatic precipitator at Jim Bridger Unit 4 was carried forward

in Operating Permits 31-120-1 and 3-1-120-2 in conditions (F6)(c) and (F19)(d)(ii).

**Exhibits C and D**, pp. 6-7; 10.

Pursuant to PacifiCorp's operating permit 31-120-1, condition (F29) and (NSPS-

-14-

D4), **Exhibit B**, pp. 12, 16, and PacifiCorp operating permits 3-1-120-1 and 3-1-120-2,

condition (F37) and (P60-D4), **Exhibits C and D**, pp. 13, 16-17, PacifiCorp is required

to submit on a quarterly basis a written report to DEQ (referred to as "EERs" herein) that

discloses each period of time in which emissions of pollutants discharged from Jim

Bridger Units 1-4 exceeded the applicable opacity standard.

Condition (G4) in PacifiCorp's Operating Permits also requires the company to

certify that the opacity data in its EERs is "true, accurate and complete." **Exhibit B**, p.

21; **Exhibit C**, p. 22; **Exhibit D**, p. 24. The obligation to submit true and complete self-

monitoring results is fundamental to the effective implementation and enforcement of the

Wyoming Quality Act and the Clean Air Act. 42 U.S.C. § 7661c(c) and WAQSR Ch. 6,

Section 3(c)(iv).

Furthermore, any person who submits false or inaccurate monitoring data is

subject to criminal penalties. Pursuant to Article 9 of the Wyoming Environmental

Quality Act:

> Any person who knowingly makes any false statement, representation or
> certification in any application, record, report, plan or other document
> filed or required to be maintained under this act or who falsifies, tampers
> with, or knowingly renders inaccurate any monitoring device or method
> required to be maintained under this act, shall upon conviction, be fined
> not more than ten thousand dollars ($10,000.00) per day for each violation
> or imprisoned for not more than one (1) year, or both.

Wyo. Stat. § 35-11-901(k). The Clean Air Act also provides for criminal penalties for

making "any false material statement, representation, or certification in . . . any notice,

application, record, report, plan, or other document required pursuant to this chapter. . . ."

42 U.S.C. § 7413(c)(2)(A).  *United States v. Louisiana Pacific Corp.*, 908 F. Supp. 835,

840 (D. Colo. 1995), app. dismissed, 106 F.3d 345 (10th Cir. 1997) (criminal prosecution

involving false opacity reporting under the Clean Air Act).

Because PacifiCorp is required by law to determine and report the opacity of its

air pollutant emissions on a continuous basis, reports that show opacity readings in

excess of permit limits can be used to demonstrate PacifiCorp's liability for violations.

*St. Bernard Citizens for Envt'l Quality, et al. v. Chalmette Refining, L.L.C.*, 354 F.Supp.

2d 697, 706-707 (E.D. La. 2005); *Sierra Club v. Public Service Company of Colorado,*

*Inc.*, 894 F. Supp. 1455, 1461 (D. Colo. 1995); *Friends of the Earth v. Potomac Electric*

*Power Co.*, 419 F. Supp. 528, 533 (D.D.C. 1976).  Similarly, in the Clean Water Act

context, a defendant's water pollution monitoring results constitute admissions sufficient

to establish liability.[4]  *U.S. v. Brittain*, 931 F.2d 1413, 1416 (10th Cir. 1991); *Atlantic*

*States Legal Foundation v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 (11th Cir. 1990);

*Sierra Club v. Simkins Industries, Inc.*, 847 F.2d 1109, 1115 n.8 (4th Cir. 1988);  *Sierra*

*Club v. Union Oil of California*, 813 F.2d 1480, 1492 (9th Cir. 1987); *U.S. v. Gulf States*

*Steel, Inc.*, 54 F. Supp. 2d 1233, 1241 (N.D. Ala. 1999); *U.S. v. Smithfield Foods, Inc.*,

---

**4** "Where a facility's own reports establish that it is not in compliance with its permit, these reports can be used by a plaintiff in a CAA [Clean Air Act] citizen suit to prove a CAA violation, just as Water Discharge Self-Monitoring Reports (DMRs) have long been utilized as conclusive proof of permit violations by plaintiffs suing companies under the citizens suits provisions of the Clean Water Act (CWA)."  Vinal, "Proof of Wrongful Emission of Air Pollutants Under Clean Air Act," 37 P.O.F.3d 501 §7.

965 F. Supp. 769, 783 (E.D. Va. 1997); *U.S. v. Sheyenne Tooling & Mfg. Co., Inc.*, 952 F. Supp. 1420, 1421 (D.N.D. 1996); *United States v. CPS Chemical Co., Inc.*, 779 F. Supp. 437 (E.D. Ark. 1991); *Natural Res. Defense Council v. Texaco Refining*, 719 F. Supp. 281 (D.Del. 1989), *vacated, in part, on other grounds*, 906 F.2d 934 (3d Cir. 1990).

The results of PacifiCorp's continuous opacity monitoring, certified by PacifiCorp as true, accurate and complete under threat of criminal penalty, demonstrate that PacifiCorp has been in significant non-compliance with the 20 and 30 percent opacity limits in its Jim Bridger Operating Permits for years.

3. <u>Plaintiffs Are Entitled To Partial Summary Judgment to Establish that Between the 4th Quarter of 2001 Through the 3rd Quarter of 2006, PacifiCorp Violated the Applicable Opacity Limit at Jim Bridger at Least 8,767 Times at Units 1-3 and 533 Times at Unit 4.</u>

Finally, partial summary judgment should be granted to establish that PacifiCorp's continuous opacity monitor data shows that PacifiCorp has violated the 20 percent opacity limit thousands of times at Units 1-3. PacifiCorp's violations of the applicable six-minute, 20 percent opacity limit are set forth in PacifiCorp's EERs beginning with the fourth quarter of 2001 through the third quarter of 2006. **Exhibit E**. Opacity readings in excess of 20 percent on a six minute average are set forth in the column titled "Opacity Reading (6-minute Avg.)" in PacifiCorp's EERs applicable to Units 1-3. PacifiCorp's violations of the 20 percent opacity limit at Units 1-3, taken from the EERs in **Exhibit E**, are summarized in **Exhibit F.**

Partial summary judgment should also be granted to establish that PacifiCorp's

continuous opacity monitor data shows that PacifiCorp has violated the 30 percent

opacity limit hundreds of times at Unit 4. PacifiCorp's violations of the hourly, 30

percent opacity limit are set forth in PacifiCorp's EERs beginning with the fourth quarter

of 2001 through the third quarter of 2006. **Exhibit E**. Opacity readings in excess of 30

percent on an hourly average are set forth in the column titled "Maximum Opacity

Reading (1-Hour Avg.)" in PacifiCorp's EERs applicable to Unit 4. PacifiCorp's

violations of the 30 percent opacity limit at Unit 4, taken from the EERs in **Exhibit E**,

are summarized in **Exhibit G.**

     Accordingly, PacifiCorp has violated the 20 percent opacity limit between

October 1, 2001 and September 30, 2006 at Jim Bridger Units 1-3 on 8,767 occasions.

**Exhibit F**, p. 3. Furthermore, PacifiCorp has violated the 30 percent opacity limit

between October 1, 2001 and September 30, 2006 at Jim Bridger Unit 4 on 533

occasions. Therefore plaintiffs respectfully move for partial summary judgment to

establish PacifiCorp's liability for such violations.

     **B.**    **PacifiCorp's Expected Malfunction Defense Should Be Rejected As a Matter of Law.**

     PacifiCorp is expected to claim that some of its opacity violations are excused as

emergencies, abnormal conditions or equipment malfunctions. These defenses fail as a

matter of law and should be rejected.

     <u>PacifiCorp Can Not Meet its Burden to Prove Emergency or Malfunction Defenses.</u>

     PacifiCorp's expected defense that its opacity violations should be excused as

emergencies, abnormal conditions or equipment malfunctions is fatally flawed because

PacifiCorp did not timely report that any of the excess opacity readings at issue in this

case were caused by emergencies, abnormal conditions or equipment malfunctions.  In

fact, PacifiCorp affirmatively reported that none of the excess opacity readings at issue in

this case were caused by such events.  **Exhibit E**.

According to PacifiCorp's Operating Permits at Condition (G17):

The permittee may seek to establish that noncompliance with a
technology-based emission limitation under this permit was due to an
emergency, as defined in Ch 6, Sec 3(l)(i) of the WAQSR.[5]  To do so, the
permittee shall demonstrate the affirmative defense of emergency through
properly signed, contemporaneous operating logs, or other relevant
evidence that:

(a)    an emergency occurred and that the permittee can identify the
cause(s) of the emergency;
(b)    the permitted facility was, at the time, being properly operated;
(c)    during the period of the emergency the permittee took all
reasonable steps to minimize levels of emissions that exceeded the
emissions standards, or other requirements in this permit;
(d)    *the permittee submitted notice of the emergency to the Division
within one working day of the time when emission limitations were
exceeded due to the emergency.  This notice must contain a
description of the emergency, any steps taken to mitigate
emissions, and corrective actions taken.*

---

[5]  According to WAQSR Ch 6, Sec 3(l)(i), an "emergency" means
any situation arising from sudden and reasonably unforeseeable events beyond the
control of the source, including acts of God, which situation requires immediate
corrective action to restore normal operation, and that causes the source to exceed a
technology-based emission limitation under the permit, due to unavoidable increases in
emissions attributable to the emergency.  An emergency shall not include noncompliance
to the extent caused by improperly designed equipment, lack of preventative
maintenance, careless or improper operation, or operator error.

**Exhibit B**, p. 24; **Exhibit C**, p. 25, **Exhibit D**, pp. 26-27 (emphasis added).

To establish a defense of abnormal condition or equipment malfunction a similar 24-hour notice is required.  According to Permit condition (G21):

> Emissions in excess of established regulation limits as a direct result of malfunction or abnormal conditions or breakdown of a process, control or related operating equipment beyond the control of the person or firm owning or operating such equipment shall not be deemed to be in violation of such regulations, *if the Division is advised of the circumstances within 24 hours of such malfunction[6] and a corrective program acceptable to the Division is furnished*.

**Exhibit B**, p. 24; **Exhibit C**, p 25; **Exhibit D**, p. 27 (emphasis added).

To the extent PacifiCorp wanted to avail itself of the emergency, abnormal condition or equipment malfunction defense to excuse an excess opacity reading at Jim Bridger, it therefore was required by its permits to submit a report to DEQ within 24 hours of such reading.  Because PacifiCorp decided over the last five years not to claim that its excess opacity emissions at Jim Bridger at issue in this case were caused by emergency or malfunction, and in fact decided to report affirmatively at the end of each quarter that each of the excess opacity readings during that quarter were *not* the result of any emergency, abnormal condition or equipment malfunction, it may not now assert these defenses.

---

[6]  The term "malfunction" is defined at WAQSR Chapter 5, Section 2(e)(i) as:

> any sudden, infrequent, and not reasonably preventable failure of air pollution control equipment, process equipment, or a process to operate in a normal or usual manner.  Failures that are caused in part by poor maintenance or careless operation are not malfunctions.

In an identical reporting requirement under the Clean Water Act, evidence of a timely filed report is a procedural prerequisite to establishing an "upset" defense.  Thus in *Student Public Interest Research Group, Inc. v. P.D. Oil*, 627 F. Supp. 1074, 1087 (D.N.J. 1986), aff'd in part, rev'd in part at *Student Public Interest Research Group, Inc. v. Powell Duffryn Terminals*, 913 F.2d 64, 76 n.20 (3rd Cir. 1990), the court rejected the defendant's belated upset defense due to the defendant's failure to submit timely reports.  According to the court:

> Defendant has provided no evidence that satisfies any of these requirements for any particular permit violation alleged by plaintiffs. Instead, defendant broadly asserts that all of its permit violations qualify as upsets. EPA's regulations do not permit this type of blanket defense. They require that defendant demonstrate through relevant evidence that each upset is 'an exceptional incident' and meets all the other requirements of the regulation.  For example, EPA's regulations require that the defendant show that it provided EPA and NJDEP with 24-hour notice.  Defendant's upset defense is defective as a matter of law as to all of its violations on this ground alone.

Because the prompt "emergency" reporting requirements in the applicable Wyoming and Clean Air Act regulations require proof of notification before the defense will apply, WAQSR Ch. 6, Sec. 3(l) and Ch. 1, Sec. 5, and 40 C.F.R. § 70.6(g)(3)(iv) (2004), and because these provisions are virtually identical to the applicable Clean Water Act regulations for establishing an "upset" at 40 C.F.R. § 122.41(n)(3)(iii) (2004), court decisions interpreting the latter apply with equal force to the former.

In sum, PacifiCorp can not satisfy its burden to demonstrate that each period of excess opacity set forth in **Exhibits E, F and G** was caused by an emergency or malfunction because PacifiCorp has already stated it did not experience any emergencies

or malfunctions and, as a consequence, did not provide the requisite 24-hour notification.

## V.  CONCLUSION

For the reasons set forth above, partial summary judgment finding PacifiCorp liable for thousands of opacity violations at Jim Bridger Units 1-4 should issue forthwith. There is no dispute but that PacifiCorp has violated, and continues to violate, the 20 percent opacity limit applicable to Units 1-3, and the 30 percent opacity limit applicable to Unit 4.  PacifiCorp having no valid defense to these violations, partial summary judgment should issue as a matter of law.

Respectfully submitted,

DATED this 12th day of October, 2007.

SIERRA CLUB and WYOMING OUTDOOR COUNCIL, Plaintiffs


\_\_\_\_\_/s/   Reed Zars_____
Reed Zars
Attorney at Law
910 Kearney Street
Laramie, WY 82070
307-745-7979
307-745-7999 (fax)

\_\_\_\_\_/s/ John Barth_____
John Barth
Attorney at Law
P.O. Box 409
Hygiene, CO 80533
(303) 774-8868

**EXHIBITS TO PLAINTIFFS' COMBINED MOTION
AND MEMORANDUM FOR
PARTIAL SUMMARY JUDGMENT REGARDING
OPACITY VIOLATIONS AT JIM BRIDGER**

Exhibit A:     Plaintiffs' 60-day notice letter, November 15, 2006.

Exhibit B:     DEQ Operating Permit No. 30-120-2, dated October 29, 2001.

Exhibit C:     DEQ Operating Permit No. 31-120-1, dated June 14, 2004.

Exhibit D:     DEQ Operating Permit No. 3-1-120-2, dated September 6, 2005.

Exhibit E:     PacifiCorp Quarterly Excess Emission Reports from 4th Quarter 2001
               through 3rd Quarter 2006, excerpts.

Exhibit F:     Jim Bridger Units 1-3 Opacity Violation Summary.

Exhibit G:     Jim Bridger Unit 4 Opacity Violation Summary.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of October, 2007, due to the inability of serving and filing electronically the foregoing due to the size of the exhibits, I caused to be sent via U.S. Mail a CD containing the PDF files of Plaintiffs' Combined Motion and Memorandum in Support of Summary Judgment, and related Exhibits, to the following counsel of record:

Paul J. Hickey                     Robert Troyer
John A. Coppede                    Dennis Arfmann
Hickey & Evans, LLP                Hogan & Hartson
1800 Carey Avenue                  1470 Walnut Street, Suite 200
P.O. Box 467                       Boulder, CO   80302
Cheyenne, WY 82003-0467


                                   /s/      Reed Zars
                                   Reed Zars