FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

AUG 24 2009

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| SIERRA CLUB and WYOMING OUTDOOR COUNCIL, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 07-CV-42-J<br>) |
| PACIFICORP, | )<br>) |
| Defendant. | ) |

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT TO ESTABLISH DEFENDANT'S LIABILITY FOR OPACITY VIOLATIONS
### (Docket Entry 28)

The Plaintiffs' Motion for Partial Summary Judgment to Establish Defendant's Liability for Opacity Violations (Docket Entry 28), the defendant's response in opposition to the motion (Docket Entry 39), and the plaintiffs' further reply (Docket Entry 46) have come before the Court for consideration. The Court, having reviewed the parties' written submissions and materials filed in support of their respective positions, the pleadings of record, the applicable law, and being fully advised, FINDS and ORDERS as follows:

1

## Background

Plaintiffs have brought this action pursuant to the Clean Air Act citizen suit enforcement action provisions against defendant PacifiCorp seeking to "address significant and ongoing violations of air pollution permit emission limits at PacifiCorp's Jim Bridger Power Plant ("Jim Bridger") located in Sweetwater County, Wyoming." Complaint ¶ 1. The action is brought pursuant to the Clean Air Act, 42 U.S.C. § 7604(a)(1), and the operating permits for Jim Bridger, as well as 28 U.S.C. § 1331 (federal question) jurisdiction. In their action, plaintiffs seek declaratory and injunctive relief, and imposition of civil penalties.

Plaintiffs include the Sierra Club, a national citizens organization dedicated to protecting natural resources, including clean air and water, and the Wyoming Outdoor Council ("WOC"), a nonprofit membership organization founded by Wyoming residents in 1967 to conserve the state's wildlife and protect its air, water and land by promoting sound natural resources policies. The action is brought on behalf of the adversely affected members of the Sierra Club and WOC. Complaint ¶¶7-8. A separate order finding that the two plaintiff organizations have standing has been entered.

The defendant, PacifiCorp, is the majority owner and operator of the Jim Bridger Power plant located at Point of Rocks, Wyoming, approximately twenty-

six miles east of Rock Springs, Wyoming. Jim Bridger consists of four coal-fired electrical generating units. Units 1-3 each have nameplate capacities of 578 megawatts ("MW"); Unit 4 has a nameplate capacity of 561 MW. The discharge of air pollutants from Jim Bridger is regulated by air pollution "operating permits" issued by DEQ. PacifiCorp is the named permittee in DEQ Operating Permit No. 30-120-2 for Jim Bridger dated October 29, 2001. PacifiCorp is the named permittee in DEQ Operating Permit No. 31-120-1for Jim Bridger dated June 14, 2004. Finally, PacifiCorp is the named permittee in DEQ Operating Permit No. 3-1-120-2 for Jim Bridger dated September 6, 2005 (collectively referred to herein as the "Operating Permits" unless otherwise specified). PacifiCorp did not appeal any of the Operating Permits after each was issued by DEQ. Plaintiffs' Motion for Partial Summary Judgment on the First and Second Causes of Action to Establish Defendant's Liability for Opacity Violations, Docket Entry 28, Exhibits B, C, and D.[1]

Pursuant to each of the Operating Permits, "[a]ll terms and conditions of the permit[s], except those designated as not federally enforceable, are

---

[1] Unless other stated, all references to Exhibits A, B, C, etc. refer to the exhibits submitted with Plaintiffs' Motion for Partial Summary Judgment on the First and Second Causes of Action to Establish Defendant's Liability for Opacity Violations, Docket Entry 28.

enforceable by EPA and citizens under the Act." Exhibits B, C and D, p.1. PacifiCorp has responsibility for maintaining compliance with Jim Bridger's Operating Permits.

Condition (F6)(a)(iii) in PacifiCorp's Operating Permits prohibits the emission of visible pollutants from Jim Bridger Units 1-3 that exhibit greater than 20 percent opacity on a six-minute average basis, except that one two-minute reading per hour may be no more than 40 percent opacity. Exhibits B, C and D, p. 6.  The 20 percent opacity limit applicable to Jim Bridger Units 1-3 has applied at all times between October 1, 2001 and the date of this motion. Exhibits B, C and D, p. 1.

Condition (F6)(c) in PacifiCorp's Operating Permits prohibits the emission of visible pollutants from the outlet of the electrostatic precipitator at Jim Bridger Unit 4 in excess of 30 percent opacity on an hourly average basis. Exhibits B, C and D, pp 6-7.  The 30 percent opacity limit applicable to Jim Bridger Unit 4 has applied at all times between October 1, 2001 and the date of this motion. Exhibits B, C and D.

The opacity of emissions from Jim Bridger Units 1-4 is monitored and recorded on a continuous basis by continuous opacity monitors (COMs). The opacity data from COMs in the stacks at Jim Bridger Units 1-3 is reported in six

minute averages; the opacity data from the COM at the outlet of the electrostatic precipitator at Jim Bridger Unit 4 is reported in one-hour averages. A COM scientifically determines opacity by passing a beam of light through the exhaust from one side of the smokestack to the other. The less light that makes it to a sensor on the other side, the greater the opacity of emissions. 40 C.F.R. Part 60, App. B, Spec. 1. According to EPA, "[t]ransparent stack emissions that do not attenuate light will have an opacity of zero percent. Opaque stack emissions that attenuate all of the visible light will have a transmittance of zero percent or an opacity of 100 percent." Id. The COMs that measure the opacity of emissions from Jim Bridger are located and certified consistent with the requirements found at 40 C.F.R. § 60, App. B, Performance Specification 1. The opacity data from the COMs are retained in a computer at Jim Bridger.

PacifiCorp submits quarterly excess emission reports ("EERs") to DEQ that are required to identify, for each calendar quarter, all periods of time in which the opacity of pollution discharged by Jim Bridger exceeded the applicable opacity limit in the Operating Permits. Data from PacifiCorp's own COMs at Jim Bridger, as reported in the EERs, reflect excess emission and opacity readings for the various units, listing emissions from Units 1-3 that have exceeded 20 percent opacity on a six minute average. Exhibit E. Data from PacifiCorp's

COMs as reported in the EERs also reflect excess emission and opacity readings for the Unit 4, with emissions from Unit 4 that have exceeded 30 percent on an hourly average, PacifiCorp's permit limit applicable to Unit 4. Exhibit E.

The EERs reflect excess emissions and opacity readings from Jim Bridger Units 1-4 that appear to exceed the applicable opacity permit limits thousands of times in the years from the fourth quarter of 2001 through the third quarter of 2006. Exhibit E; Jim Bridger Units 1-3 and Unit 4 Opacity Violation Summaries, Exhibits F and G. PacifiCorp has certified as true, accurate, and complete the opacity data set forth in its EERs. For example, see Exhibit E, Fourth Quarter 2001 Report, p. 3.

As stated above, plaintiffs have brought this citizen enforcement suit, as allowed by the Clean Air Act, alleging that PacifiCorp has violated its operating permits by exceeding the stated opacity limits for Units 1-4. They rely on the EERs as compiled by the defendant's computerized COM system at Jim Bridger. They allege that the reports show from October 1, 2001 through September 30, 2006, PacifiCorp exceeded the 20 percent, six-minute average opacity limit applicable to Units 1-3 at least 8,767 times. Jim Bridger Units 1-3 Opacity Violation Summary, Exhibit F. Plaintiffs assert as well that from October 1, 2001 through September 30, 2006, PacifiCorp exceeded the 30 percent, one-hour

average opacity limit applicable to Unit 4 at least 533 times. Jim Bridger Unit 4 Opacity Violation Summary, Exhibit G.

"Emergency" and "Abnormal Conditions and Equipment Malfunction" are exceptions to the opacity limits applicable to Units 1-4 set forth in PacifiCorp's Operating Permits. Conditions (G17) and (G21), Exhibit B, p. 24; Exhibit C, p. 25, Exhibit D, pp. 26-27.

Plaintiffs argue that to establish an affirmative defense of an emergency, abnormal condition or equipment malfunction, PacifiCorp must demonstrate that it provided notice to DEQ of such an event within 24 hours. Conditions (G17) and (G21), Exhibit B, p. 24; Exhibit C, p. 25, Exhibit D, pp. 26-27. Plaintiffs contend PacifiCorp has not done so in this case.

Plaintiffs state that during the period from October 1, 2001 through September 30, 2006, PacifiCorp did not provide notice to DEQ that any of its excess opacity periods were caused by an emergency, abnormal condition or equipment malfunction. Exhibit E. In fact, in each of its EERs for this period, for each unit, PacifiCorp affirmatively stated that "0" minutes of "excess emission events" were "due to emergency/abnormal operations." Exhibit E.

The defendant disagrees with the plaintiffs' position, arguing that it is based entirely on the assumption that exceedances reported in the EERs are

violations of the Clean Air Act. Defendant contends the EERs are simply report periods when opacity monitors record opacity above the applicable permit limits during the applicable reporting time period. The defendant argues that the EERs do not include identification of exceptions or exemptions available to demonstrate that reported exceedances are not violations of the Clean Air Act. Defendant also asserts that the doctrine of fair notice, based on the Wyoming DEQ's use of a "5% policy" to determine when excess opacity emissions will be considered violations, provides a defense to the plaintiffs' claims.

Defendant contends that the reported excess emissions are subject to at least three exemptions found in the operating permits. These include an exemption in permit conditions (F6)(a)(iii) and (F37)(c) [the 2-minute, 40% term of (F6)(a)(iii)]; the abnormal conditions/malfunction provision in the permits; and exceedances occurring during certain startup and shutdown events.

There are pending motions for summary judgment regarding several issues. This opinion addresses the plaintiffs' motion for partial summary judgment on the first and second causes of action seeking to establish defendant's liability for opacity violations. A separate motion filed by the defendant seeking interpretation of permit language, and plaintiffs' opposition

thereto, will be considered in a separate order.

## Standard of Review

Summary judgment is proper when there is no genuine issue of material fact to be resolved at trial. Fed. R. Civ. P. 56(c); Nebraska v. Wyoming, 507 U.S. 584, 590 (1993). Thus, a district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Nelson v. Geringer, 295 F.3d 1082, 1086 (10th Cir. 2002). "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment." Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir. 1997).

In applying these standards, the district court will view the evidence in the light most favorable to the party opposing summary judgment. Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). The movant bears the initial burden of demonstrating the absence of evidence to support the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). When the non-moving party bears burden of proof at trial, the burden then shifts to it to

demonstrate the existence of an essential element of its case. Id. To carry this burden, the non-moving party must go beyond the pleadings and designate specific facts to show there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Ford v. West, 222 F.3d 767, 774 (10th Cir. 2000). The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient to create a "genuine" issue of disputed fact. Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).

**Discussion**

Plaintiffs' motion for partial summary judgment contends that the Court should grant judgment in their favor as a matter of law as to counts 1 and 2 of their complaint. The plaintiffs argue that the defendant's own reports, the Excess Emission Reports for an extensive period of time, demonstrate that opacity limits have been violated thousands of time for a period from October 1, 2001 through September 30, 2006 as to Units 1-3 and Unit 4 of the Jim Bridger Power plant. Plaintiffs assert there is no applicable exception or exemption that would apply to permit the excess emissions noted in the EERs. Defendant has, in response to the motion, contended that most of the opacity exceedances were caused by start up, shut down, or malfunction and should

not, therefore be considered as violations under the Clean Air Act. Defendant has also argued that the fair notice doctrine should cause the Court to find that other remaining exceedances were not violations because of the 5% rule utilized by the State of Wyoming to determine opacity violations. The defendant contends that the State of Wyoming DEQ does not consider exceedances occurring less than five percent of the operating time in any one quarter and less than three percent of the operating time in two consecutive quarters to be violations. Included in the defendant's submissions is the Affidavit of William Kearns Lawson, Director of Environmental Services for PacifiCorp, in which he addresses his understandings regarding the 5% policy and the EPA Cooperative Enforcement Agreement, and regarding the opacity regulations and permit conditions at issue in this case. Defendant argues these issues preclude summary judgment as to opacity violations and that the Court should reject the plaintiffs' assertion that all reported exceedances in the EERs constitute violations in this citizen suit.

Plaintiffs disagree with the defendant's arguments and challenge the defenses raised. They disagree that the 5% policy has application at all in a citizen suit case such as this one. Unless the policy has been approved by the EPA and included in Wyoming's state implementation plan, it should not be

applied. The cooperative enforcement policy is not a permit exception immunizing the defendant from enforcement of permit limits in this citizen suit. Plaintiffs argue that the permit interpretation defense asserted by defendant is unavailing because PacifiCorp has failed to show specific facts that individual excess opacity readings should be excused by operation of the 2-minute, 40% opacity exception. Plaintiffs argue that the malfunction defense only permits exceedances from being viewed as violations if the defendant notifies the state of the malfunction within 24 hours of the incident. Plaintiffs also state that PacifiCorp has consistently and affirmatively stated in its EERs that none of the excess emissions were due to abnormal conditions or malfunctions. Plaintiffs assert that PacifiCorp has provided no evidence that excess emissions due to start up and shut down are included or identified in any of the EERs.

Upon a careful review of the parties' submissions, the Court believes there are obvious issues of fact as to the plaintiffs' opacity claims. The trier of fact will be required to determine which exceedances qualify as startup, shutdown or were the result of malfunctions, if any. The EERs include cause codes and corrective action codes for each excess emission incident in the report. The reports include notations for "Total time for all excess emissions events including periods of startup, shutdown, and emergency/abnormal

operations" and for "Subtotal of excess emissions due to emergency/abnormal operations." See e.g., Docket Entry 28-7, Exhibit E-2001 4th Quarter 2001 at 16. The trier of fact will be required to determine if and when the malfunctions, if any, were reported to the state. The trier of fact will be required to determine issues relative to the state's purported 5% rule and how it might be applied in this case, if it believes the policy to have application in this case. Even assuming the 5% rule does apply, solely for purposes of this discussion, the Court is unable to determine as a matter of law what exceedances would or would not constitute violations of the applicable permit limits or the 5% policy.

There are numerous factual disputes regarding the claimed violations -- which may have occurred during startup, shutdown, or abnormal operations or malfunctions. The trier of fact will be required to determine what constitutes a violation and to quantify or identify each violation. If the plaintiffs demonstrate exceedances at Jim Bridger did not qualify as startup, shutdown or properly reported malfunctions, it is likely the trier of fact would find liability for exceedances which are found to be in violation of the applicable permits.

The Court is unable to conclude, as a matter of law, that either party is entitled to summary judgment on the plaintiff's motion for opacity violations,

for the reasons that there are genuine issues of material fact in dispute. Accordingly, it is therefore

**ORDERED** that plaintiffs' Motion for Partial Summary Judgment on the First and Second Causes of Action to Establish Defendant's Liability for Opacity Violations (Docket Entry 28) shall be, and is, **DENIED.**

Dated this 21st day of August 2009.

/s/ Alan B. Johnson
UNITED STATES DISTRICT JUDGE