FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

AUG 24 2009

Stephan Harris, Clerk
Cheyenne

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

SIERRA CLUB and WYOMING )
OUTDOOR COUNCIL, )
 )
    Plaintiffs, )
 )
v. )   No. 07-CV-42-J
 )
PACIFICORP, )
 )
    Defendant. )

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO INTERPRET PERMIT LANGUAGE (Docket Entry 30)**

The Defendant's Motion for Summary Judgment to Interpret Permit Language (Docket Entry 30), the plaintiffs' response in opposition to the motion (Docket Entry 43), and the defendant's further reply (Docket Entry 45) have come before the Court for consideration. The Court, having reviewed the parties' written submissions and materials filed in support of their respective positions, the pleadings of record, the applicable law, and being fully advised, FINDS and ORDERS as follows:

1

## Background

Much of the background in this case has been set out in the companion "Order on Plaintiffs' Motion for Summary Judgment to Establish Defendant's Liability for Opacity Violations (Docket Entry 28)" and is adopted by reference herein. The instant motion filed by defendant PacifiCorp concerns only Units 1-3. In its brief, PacifiCorp asserts that it seeks an interpretation from this Court that reconciles two "key, uninterpreted provisions in the Clean Air Act ('CAA' or the 'Act') Title V operating permits issued to PacifiCorp's Jim Bridger coal-fired power plant in Sweetwater County, Wyoming ('Bridger Plant')." It argues that one provision of the applicable operating permits sets a 20% opacity limit for Units 1-3, while allowing opacity readings of up to 40% for two minutes in any hour to be exempted from consideration as violations. It also contends that the permits contain an additional provision requiring the Bridger Plant to report to the Wyoming Department of Environmental Quality ("WDEQ") for each quarter all opacity readings above 20% in six-minute averages.

PacifiCorp contends that the plaintiffs in this citizens suit have improperly argued that opacity provisions of the operating permits have been violated, when they failed to take into account the exemption provided in the conditions of the permit allowing for up to 40% opacity for two minutes in each hour.

PacifiCorp asserts that interpretation of the two permit provisions allows it to exempt certain excess emission readings from those which might otherwise form the basis of the plaintiffs' alleged permit violations while still allowing it to meet the quarterly reporting requirement based on six-minute averages.

Plaintiffs oppose the motion and suggest that PacifiCorp's motion, brought in the guise of a motion to interpret permit language, improperly seeks an advisory opinion or declaratory relief, although not so requested in its answer. Plaintiffs contend the motion to interpret permit language is untimely, not properly the subject of a Rule 56 summary judgment motion, that it seeks to revise reported emission values long after the deadline for submission, and that it seeks an interpretation of the two-minute 40% exception contrary to language and "accepted numerical conversion of this provision." These assertions are challenged by PacifiCorp in its reply brief.

**Standard of Review**

Summary judgment is proper when there is no genuine issue of material fact to be resolved at trial. Fed. R. Civ. P. 56(c); Nebraska v. Wyoming, 507 U.S. 584, 590 (1993). Thus, a district court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Nelson v. Geringer, 295 F.3d 1082, 1086 (10th Cir. 2002). "An issue of material fact is genuine where a reasonable jury could return a verdict for the party opposing summary judgment." Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir. 1997).

In applying these standards, the district court will view the evidence in the light most favorable to the party opposing summary judgment. Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). The movant bears the initial burden of demonstrating the absence of evidence to support the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). When the non-moving party bears burden of proof at trial, the burden then shifts to it to demonstrate the existence of an essential element of its case. Id. To carry this burden, the non-moving party must go beyond the pleadings and designate specific facts to show there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Ford v. West, 222 F.3d 767, 774 (10th Cir. 2000). The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient to create a "genuine" issue of disputed fact. Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).

**Discussion**

WDEQ issued the Title V permits for the Jim Bridger plant. Permit condition (F6)(a)(iii) provides:

> (F6) COAL-FIRED BOILER EMISSIONS
> [WAQSR Ch 3, Sec 3, Ch 3, Sec 2, and Ch 6, Sec 2, Permit OP-228, and 40 CFR 60 Subpart D]
>
> (a) Emissions from boilers 1, 2, and 3 (sources 1 through 3) shall be limited to:
>
>     (I) 0.70 lb/MMBtu of heat input of $NO_x$;
>
>     (ii) 0.10 lb/MMBtu of heat input of particulate matter, maximum two-hour average; and
>
>     (iii) No greater than 20 percent opacity of visible emissions, except that 40 percent opacity shall be permitted for not more than two minutes in any hour.

See Defendant's Exhibit A, Document 33-3 at Page 7 of 20; also in the pleadings at Plaintiff's Exhibit C at Document 28-4, page 7 of 47. The permits in the record for Units 1 - 3 are substantially the same as to the particular conditions addressed in this opinion. The permits have been in place since 1971, as has been the condition identified above in (F6)(a)(iii).

Reporting Requirements are set out beginning at Defendant's Exhibit A,

Document 33-3 at Page 14 of 20; also Document 28-4, Page 14 of 47, providing in part:

> (F37) EXCESS EMISSIONS AND MONITORING SYSTEM PERFORMANCE REPORTS FOR OPACITY AND $NO_x$ EMISSIONS FROM BOILERS 1, 2, AND 3 [WAQSR Ch 6, Sec 3 (h)(i)(C)(III)]
>
> (a) For boilers 1, 2, and 3, the permittee shall submit an excess emissions and monitoring systems performance report (excess emissions are defined in paragraphs (b) and (c) of this condition) and/or a summary report form (see paragraph (a)(v) of this condition) to the Administrator quarterly. All reports shall be postmarked by the 30th day following the end of each calendar quarter. Written reports of excess emissions shall include the following information:
>
> (I) The magnitude of excess emissions computed in accordance with WAQSR Chapter 5, Section 2(j)(vii), any conversion factor(s) used, and the date and time of commencement and completion of each time period of excess emissions. The process operating time during the reporting period.
>
> (ii) Specific identification of each period of excess emissions that occurs during start-ups, shutdowns, malfunctions of boilers 1, 2, and 3. The nature and cause of any malfunction (if known), the corrective

        action taken or preventative measures adopted.

- (iii) The date and time identifying each period during which the continuous monitoring system was inoperative except for zero and span checks and the nature of the system repairs or adjustments.

- (iv) When no excess emissions have occurred or the continuous monitoring system(s) have not been operative, repaired, or adjusted, such information shall be stated in the report.

- (v) One summary report form for each pollutant monitored at each affected facility in a formal approved by the Division.

  - (A) If the total duration of excess emissions for the reporting period is less than one percent of the total operating time for the reporting period and continuous monitoring system downtime for the reporting period is less than five percent of the total operating time for the reporting period, only the summary report form shall be submitted and the excess emission report described in paragraph (a) of this condition need not be submitted unless requested by the Administrator.

  - (B) If the total duration of excess emissions for the reporting period is

        one percent or greater of the total operating time for the reporting period or the total continuous monitoring system downtime for the reporting period is five percent or greater of the total operating time for the reporting period, the summary report form and the excess emission report described in paragraph (a) of this condition shall both be submitted.

(b)    For the purpose of reporting under this condition, $NO_x$ excess emissions are defined as any fixed three-hour period during which the average emissions of $NO_x$ from boilers 1, 2, or 3 exceed 0.70 lb/MMBtu of heat input.

(c)    For the purpose of reporting under this condition, opacity excess emissions are defined as any six-minute period during which the average opacity of emissions exceeds 20 percent.

(d)    Notwithstanding the frequency of reporting requirements specified in paragraph (a) of this condition, a permittee who is required to submit excess emissions and monitoring systems performance reports (and summary reports) on a quarterly (or more frequent) basis may reduce the frequency of reporting for that standard to semiannual as described in WAQSR Chapter 5, Section 2(g)(iv). Any reduction in reporting frequency requires a significant modification to this operating

>   permit pursuant to WAQSR Chapter 6, Section 3(d)(vi)(C).
>
> (e) The reports shall be submitted to the Division in accordance with condition G4 of this permit.

Upon a careful review of the parties' submissions, the Court believes PacifiCorp's motion seeking interpretation of the permit language should be denied. There are numerous issues of fact precluding summary judgment in defendant's favor, as have been addressed in the companion order regarding plaintiffs' motion for summary judgment to establish defendant's liability for opacity violations. These issues include whether opacity exceedances qualify as startup, shutdown or were the result of malfunctions, if any, and may not therefore be considered as violations. Having considered the instant motion, the Court believes that the defendant's motion should be denied in that it improperly seeks "interpretation" of permit language that should be addressed and considered first by WDEQ, the state entity charged with the responsibility of implementing and administering these permit matters.

PacifiCorp's own brief exemplifies the problems it raises with this motion when it states in its brief (Docket Entry 33, with supporting Exhibits and Affidavit of William Kearns Lawson), the following "undisputed facts":

6.  PacifiCorp has asked the WDEQ how to calculate the "two-minute, 40% exemption" in permit condition (F6)(a)(iii) while still complying with (F37)(c).  See Lawson Affidavit ¶ 14.

7. The WDEQ has not informed PacifiCorp how to calculate the "two-minute, 40% exemption" in permit condition (F6)(a)(iii), much less how to reconcile it with the requirement of (F37)(c). Instead, the WDEQ has suggested that the rule be changed, or that the permit itself be modified to define the requirement.  *See* Lawson Affidavit ¶ 15.  Ex. G, Letter from WDEQ Air Quality Division Administrator David A. Finley to Bill Lawson of PacifiCorp, May 9, 2007 ("Finley Letter").

8. The WDEQ has acknowledged that WAQSR Chapter 3, Section 2(h), which provides the basis for permit condition (F6)(a)(iii), is confusing and out-dated, and requires major amendment. *See* Lawson Affidavit ¶ 61, Ex. G; Ex. H, Minutes, Air Quality Advisory Board Meeting, White Mountain Library, Rock Springs, Wyoming, June 25 and June 26, 2007, at 6-9 (WDEQ's Mike Stoll referred to Chapter 3, Section 2 as the basis for "the mess we are currently in." *Id.* at 6.).

The Court agrees that the relief sought by the defendant in its motion seeking to interpret permit language would be advisory. PacifiCorp is asking that this Court opine as to the validity and agency interpretation of the opacity requirements of the applicable permits in a vacuum, without the benefit of agency discussion and expertise regarding the particular issue in question. PacifiCorp has had, for thirty years or more, an opportunity to challenge administratively the agency action at issue here as arbitrary and capricious or contrary to law. On the record before this Court, it does not appear that PacifiCorp has done so.

This Court is obliged to satisfy itself that it has jurisdiction to hear the actual case or controversy presented in the parties' submissions. In this case, the Court concludes that, as an Article III court, it does not have jurisdiction to render any sort of advisory opinion regarding the opacity standards set out in the permits and will not substitute its judgment for that of the EPA and WDEQ. See e.g., Public Service Co. of Colorado v. United States Environmental Protection Agency, 225 F.3d 1144, 1148 n. 4 (10th Cir. 2000) ("This court would violate Article III's prohibition against advisory opinions were it to do that which PSCo requests, i.e., issue a mere statement that the EPA's interpretation and application of the law was incorrect without ordering some related relief.");

United States v. Burlington Northern R. Co., 200 F.3d 679, 699 (10th Cir. 1999) ("'It is fundamental that federal courts do not render advisory opinions and that they are limited to deciding issues in actual cases and controversies.' *quoting* Norvell v. Sangre de Cristo Dev. Co., Ind., 519 F.32d 370, 3756 (10th Cir. 1975)."); Surefoot LC v. Sure Foot Corp., 539 F.3d 1236, 1240-1248 (10th Cir. 2008) (extensive discussion of declaratory judgment actions in trademark infringement context and Article III jurisdictional requirements); Corder v. Lewis Palmer School Dist. No. 38, 566 F.3d 1219, 1224 (10th Cir. 2009) [("'Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual, ongoing cases or controversies.' *quoting* Seneca-Cayuga Tribe v. Nat'l Indian Gaming Comm'n, 327 F.3d 1019, 1028 (10th Cir.2003) (internal quotations and alteration omitted). 'It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant toward the plaintiff. Hence, this court has explained that a plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future.' Green v. Branson, 108 F.3d 1296, 1299-1300 (10th Cir.1997) (internal quotations,

citations and alterations omitted)].

The Court is of the opinion that the defendant PacifiCorp will be able to address the issues raised in the instant motion during trial. By way of example only, PacifiCorp could call a witness from the WDEQ at trial to explain the 5% policy and explain how it has interpreted and applied the pertinent permit opacity limits and reporting requirements since 1971 and in subsequent years.

Even if this Court did accept PacifiCorp's argument that it has not requested an advisory opinion, PacifiCorp's arguments regarding interpretation of the permit opacity limits and reporting requirements do not satisfy Rule 56 evidentiary standards. The Court remains unable to determine as a matter of law which and how many excess emissions on the EERs over the many years at issue would come within the two minute-40% exemption as construed by PacifiCorp or, alternatively, as construed by the plaintiffs. The testimony of advised and informed persons with knowledge of these matters would be extremely helpful to the trier of fact and would help make sense out of the various and voluminous materials that have been submitted in support of the parties' respective positions. Without such testimony, the materials can be easily viewed as confusing.

Clearly, there are material disputes as to the essential underlying facts.

The movant, defendant PacifiCorp, bears the initial burden of demonstrating the opposing party, the plaintiffs, have no facts to support their claims. See Celotex Corp., 477 U..S. at 325. Thus far, PacifiCorp has not carried that burden. Viewing the evidence in a light most favorable to the citizen suit plaintiffs in this case, it appears that PacifiCorp may have violated the opacity limits set forth in the permit(s) at the Jim Bridger Power Plant. Plaintiffs may demonstrate at trial that there were reported opacity exceedances at Jim Bridger which do not qualify as startup, shut down or malfunctions which were not reported. They may be able to demonstrate through the testimony of the state officials or others that there is no 5% rule or policy which would effectively increase the permissible exceedance limits before enforcement action might be taken. Plaintiffs may be able to demonstrate that the two-minute, 40% "exemption" can be converted to a 27% opacity limit over a six-minute period and yield comparable or equivalent numbers. All of these things compel the Court to conclude that PacifiCorp's Motion for Summary Judgment to Interpret Permit Language should be denied. Accordingly, it is therefore

**ORDERED** that defendant's Motion for Summary Judgment to Interpret Permit Language (Docket Entry 30) shall be, and is, **DENIED**.

Dated this 21st day of August 2009.

_____
UNITED STATES DISTRICT JUDGE