UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | | |
|---|---|---|
| SIERRA CLUB and WYOMING OUTDOOR COUNCIL, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 07-CV-042-J |
| PACIFICORP, | ) ) ) | |
| Defendant. | ) | |

**CONSENT DECREE**

Date lodged in Court: 4/15/10

Date entered by Court: _____

# I. BACKGROUND

WHEREAS, on February 21, 2007, Sierra Club and the Wyoming Outdoor Council (the "WOC," together, "Plaintiffs") filed a citizen-suit complaint against PacifiCorp ("Defendant") pursuant to Sections 304 and 113(b) of the Clean Air Act (the "Act"), 42 U.S.C. §§ 7604 and 7413(b), alleging violations of the opacity limits applicable to Defendant's coal-fired Jim Bridger power plant in southwest Wyoming;

WHEREAS, Plaintiffs' complaint alleged that Defendant violated the applicable opacity limits at Jim Bridger Units 1–4 repeatedly from the fourth quarter of 2001 through the third quarter of 2006;

WHEREAS, Plaintiffs' complaint sought declaratory and injunctive relief, the imposition of a civil penalty, and costs of litigation;

WHEREAS, on April 2, 2007, Defendant answered Plaintiffs' complaint. Defendant denied and continues to deny liability with respect to any claims or assertions in such complaint;

WHEREAS, Plaintiffs and Defendant agree that the settlement of this action through this Decree without further litigation is in the public interest, and is a fair, reasonable and appropriate means of resolving all claims in Plaintiffs' complaint;

WHEREAS, Plaintiffs and Defendant consent to the entry of this Decree without further trial or appeal;

NOW, THEREFORE, it is hereby ORDERED AND DECREED as follows:

## II.   DEFINITIONS

1.   Unless otherwise expressly provided herein, terms used in this Decree that are defined in the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, or regulations implementing the Clean Air Act shall have the meaning set forth in the Act or those regulations.

2.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

(a)  "Act" shall mean the Clean Air Act, 42 U.S.C. § 7401, *et seq.*

(b)  "COMS" shall mean continuous opacity monitoring system, which consists of the total equipment used to sample, analyze, and record opacity on a continuous basis.

(c)  "Decree" shall mean this Consent Decree, and any written modifications of such Decree.

(d)  "EPA" shall mean the United States Environmental Protection Agency.

(e)  "Excess" with respect to opacity shall mean each six-minute (for Units 1–3) or one clock-hour (for Unit 4) period of time during which the opacity of emissions exceeded the applicable opacity limit, regardless of cause or any regulatory exception, as determined by the COMS.

(f)  "Jim Bridger" shall mean Defendant's coal-fired power plant located east of Rock Springs, Wyoming.

(g)  "Opacity" shall mean the degree to which emissions reduce the transmission of light and obscure the view of an object in the background.

(h)  "Parties" shall mean Plaintiffs and Defendant.

(i)  "Title V" shall mean Title V of the Clean Air Act, 42 U.S.C. § 7661 through § 7661f.

(j)  "WDEQ" shall mean the Wyoming Department of Environmental Quality.

### III. JURISDICTION AND VENUE

3. This Court has jurisdiction over the Parties to and the subject matter of this action under Section 304 of the Act, 42 U.S.C. § 7604, the citizen-suit provision of the Act, and under 28 U.S.C. §§ 1331, 1345, and 1355.

4. Venue is proper in this Judicial District under Section 304(c) of the Act, 42 U.S.C. § 7604(c), and under 28 U.S.C. §§ 1391 and 1395.

### IV. APPLICABILITY

5. The provisions of this Decree shall apply to, be binding upon, and inure to the benefit of the Plaintiffs, as well as Plaintiffs' successors and assigns, and Defendant, as well as Defendant's successors and assigns.

### V. TITLE V PERMIT MODIFICATION

6. Within 60 days of entry of this Decree by the Court, Defendant shall apply to the WDEQ for a modification of the Title V operating permit for Jim Bridger to include (to the extent not already included) the following opacity emission limits and other conditions in this Section V that will apply at all times that air pollutants are discharged into the atmosphere from Jim Bridger:

    (a) <u>Jim Bridger Units 1–3</u>

        (1) Emissions from Units 1, 2 and 3 shall be limited to no greater than 20% opacity during any 6-minute period, as measured in each stack by a COMS certified pursuant to WAQSR Chapter 6, Section 3, as approved by EPA, and WAQSR Chapter 7, Section 2, as approved by EPA;

        (2) Any 6-minute average reading in excess of 20% opacity is deemed a violation, unless Defendant demonstrates that an exception applies.

Acknowledging and including the statement in Paragraph 7 in this Decree, only the following exceptions to the 20% opacity limit apply:

    a. 27% average opacity shall be permitted for not more than one six-minute period per hour (this exception replaces the 2-minute, 40% opacity exception found in the Jim Bridger Title V permit as of the date of this Decree); and

    b. Opacity greater than 20% due to Unavoidable Equipment Malfunction. To establish an Unavoidable Equipment Malfunction Defendant must comply with WAQSR Chapter 1, Section 5(a), which states:

    (i) Any source believing that any emissions in excess of established regulation limits or standards resulted from an unavoidable equipment malfunction shall notify the Division within 24 hours of the incident via telephone, electronic mail, fax, or other similar method. A detailed description of the circumstances of the incident as described in paragraph 5(a)(i)(A) of this section, including a corrective program directed at preventing future such incidents, must be submitted within 14 days of the onset of the incident.

    (A) In the incident report noted above, the source shall include any relevant evidence, including, but not necessarily limited to, evidence that (1) there was an equipment malfunction beyond the reasonable control of the owner or operator; (2) the excess emissions could not have been avoided by better operation, maintenance or improved design of the malfunctioning component; (3) to the maximum extent practicable, the source maintained and operated the air pollution control equipment and process equipment, in a manner consistent with good practice for minimizing emissions, including minimizing any bypass emissions; (4) any necessary repairs were made as quickly as practicable, using off-shift labor and overtime as needed and possible; (5) all practicable steps were taken to minimize the potential impact of the excess emissions on ambient air quality; and (6) the excess emissions are not part of a recurring pattern that may have been caused by inadequate operation or maintenance, or inadequate design of the malfunctioning component.

        (ii) The burden of proof is on the owner or operator of the source to provide sufficient information to demonstrate that an unavoidable equipment malfunction occurred.

    c.  A startup or shutdown exception to the extent provided for in a future, final, unappealable Title V permit.

(b) <u>Jim Bridger Unit 4</u>

(1)  Opacity readings from the COMS in the duct immediately downstream from the electrostatic precipitator at Jim Bridger Unit 4 shall not exceed an average of 30% opacity during any one clock-hour period, as measured by a COMS certified pursuant to WAQSR Chapter 6, Section 3, as approved by EPA, and WAQSR Chapter 7, Section 2, as approved by EPA.

(2)  Any one clock-hour reading in excess of 30% opacity is deemed a violation, unless Defendant demonstrates an exception applies.

(3)  Acknowledging and including the statement in Paragraph 7 in this Decree, only the following exceptions to the 30% opacity limit apply:

    a.  Emergency, which is defined as any situation arising from sudden and reasonably unforeseeable events beyond the control of the source, including acts of God, which situation requires immediate corrective action to restore normal operation, and that causes the source to exceed a technology-based emission limitation under the permit, due to unavoidable increases in emissions attributable to the emergency. An emergency shall not include noncompliance to the extent caused by improperly designed equipment, lack of preventative maintenance,

careless or improper operation, or operator error. *See* WAQSR Chapter 6, Section 3(l)(I); and

b. Unavoidable Equipment Malfunction. To establish an Unavoidable Equipment Malfunction Defendant must comply with WAQSR Chapter 1, Section 5(a), which states:

(i) Any source believing that any emissions in excess of established regulation limits or standards resulted from an unavoidable equipment malfunction shall notify the Division within 24 hours of the incident via telephone, electronic mail, fax, or other similar method. A detailed description of the circumstances of the incident as described in paragraph 5(a)(i)(A) of this section, including a corrective program directed at preventing future such incidents, must be submitted within 14 days of the onset of the incident.

(A) In the incident report noted above, the source shall include any relevant evidence, including, but not necessarily limited to, evidence that (1) there was an equipment malfunction beyond the reasonable control of the owner or operator; (2) the excess emissions could not have been avoided by better operation, maintenance or improved design of the malfunctioning component; (3) to the maximum extent practicable, the source maintained and operated the air pollution control equipment and process equipment, in a manner consistent with good practice for minimizing emissions, including minimizing any bypass emissions; (4) any necessary repairs were made as quickly as practicable, using off-shift labor and overtime as needed and possible; (5) all practicable steps were taken to minimize the potential impact of the excess emissions on ambient air quality; and (6) the excess emissions are not part of a recurring pattern that may have been caused by inadequate operation or maintenance, or inadequate design of the malfunctioning component.

(ii) The burden of proof is on the owner or operator of the source to provide sufficient information to demonstrate that an unavoidable equipment malfunction occurred.

c. A startup or shutdown exception to the extent provided for in a future, final, unappealable Title V permit.

7. No startup or shutdown exception applies for any boiler (Units 1–4) unless it is provided for in a future, final, unappealable Title V permit. Defendant is not precluded from seeking a startup and/or shutdown exception for any Jim Bridger unit in a future Title V permit, and Plaintiffs are not precluded from objecting to such exception. While the Parties cannot agree as to whether a startup or shutdown exemption applies currently to Jim Bridger Units 1–4, the Parties agree that Defendant will not attempt to use or to other otherwise take advantage of any startup or shutdown exception for these units unless and until such an exception is provided for in a future, final, unappealable Title V permit.

8. The exceptions set forth in paragraph six of this Decree are allowed only if Defendant demonstrates that it has met all procedural and substantive elements of those exceptions.

9. Defendant must demonstrate that the emergency exception stated herein at Section V, Paragraph 6(b)(3)a. applies through properly signed, contemporaneous operating logs and other relevant evidence that provides details including:

>   a. an emergency occurred and Defendant can identify the cause(s) of the emergency;
>
>   b. Jim Bridger was, at the time, being properly operated;
>
>   c. during the period of the emergency Defendant took all reasonable steps to minimize levels of emissions that exceeded the emissions standards, or other requirements in the Title V permit governing Jim Bridger;
>
>   d. Defendant submitted notice of the emergency to the Air Quality Division of the WDEQ within one working day of the time when emission limitations were exceeded due to the emergency. This

notice must contain a description of the emergency, any steps taken to mitigate emissions, and corrective actions taken.

10. The WDEQ's 5% enforcement prioritization tool does not apply to citizen enforcement of any Title V permit that governs Jim Bridger.

11. Defendant shall submit quarterly excess emission reports to the WDEQ that shall include all excess opacity readings in Form C and all related malfunction reports.

## VI. CIVIL PENALTY

12. Within thirty (30) days of entry of this Decree, Defendant shall pay a civil penalty to the United States Treasury in the amount of $1,000,000.00 to be deposited and used as provided for by 42 U.S.C. § 7604(g)(1). Payment shall be made by cashier's check, certified check, or electronic funds transfer payable to "Treasurer, United States of America," and delivered to the United States Attorney for the District of Wyoming. Copies of the transmittal letter and check (or letter notification upon completion of an electronic fund transfer) shall be sent to the following addresses:

> Carol Rushin
> Regional Administrator
> United States Environmental
> Protection Agency, Region VIII
>
> Section Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> United States Department of Justice
> Post Office Box 7611
> Benjamin Franklin Station
> Washington, D.C. 20044
>
> Reed Zars
> Attorney at Law
> 910 Kearney Street
> Laramie, WY 82070

13. Defendant shall not deduct the payment of any civil penalty provided for above for any tax purpose or otherwise obtain any favorable tax treatment of, or for, such civil penalty payment.

## VII.  NOTIFICATIONS AND RECORDKEEPING

14. All notifications, submittals, reports, and other information required by this Decree shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.

<u>For the Plaintiffs:</u>

Reed Zars
Attorney at Law
910 Kearney Street
Laramie, WY 82070
307-745-7979

John Barth
Attorney at Law
P.O. Box 409
Hygiene, CO 80533
303-774-8868
barthlaw@aol.com

<u>For Defendant:</u>

Dean Brockbank, General Counsel
PacifiCorp Energy
1407 W. North Temple, Suite 320
Salt Lake City, Utah 84121
801-220-4568
dean.brockbank@pacificorp.com

Bob Troyer
Hogan & Hartson LLP
One Tabor Center
1200 Seventeenth Street, Suite 1500
Denver, Colorado 80202
303-454-2522
rctroyer@hhlaw.com

## VIII. EFFECT OF SETTLEMENT

15. This Decree constitutes a complete and final release of all civil claims for violations alleged in the Plaintiffs' complaint. By entering into this Decree, Defendant does not admit any liability with respect to the allegations made in Plaintiffs' complaint.

16. The failure of any Party to comply with any requirement contained in this Decree will not excuse the obligation to comply with other requirements contained herein.

17. Nothing in this Decree shall preclude any Party from commenting on or objecting to any administrative, legislative or regulatory action, proposed action, approval or proposed approval that is inconsistent with or unrelated to the requirements of this Decree.

18. Sierra Club and the WOC agree not to bring an action (other than to enforce this Decree) for opacity violations at Jim Bridger during the term of the Decree.

## IX. COMPLIANCE WITH OTHER LAWS

19. This Decree is not a permit, and it does not relieve Defendant of its responsibility to comply fully with all federal, state, and local laws and regulations, Orders of this Court, and provisions of the Wyoming State Implementation Plan, including any modifications or revisions thereto, that may be applicable.

20. Notwithstanding the foregoing, in the event of any conflict between the requirements of this Decree and applicable laws and regulations, the more stringent requirements shall apply. Furthermore, any change to currently applicable laws and regulations that would have the effect of relaxing Defendant's obligations under this Decree shall not apply for purposes of this Decree.

## X. LITIGATION COSTS

21. Defendant agrees that, pursuant to 42 U.S.C. § 7604(d), Plaintiffs are both eligible and entitled to recover their reasonable costs of litigation in this action, including reasonable attorney

and expert witness fees.   If Defendant and Plaintiffs are unable to reach an agreement regarding the amount of such costs, Plaintiffs may petition the Court for a determination of such amount. Plaintiffs expressly reserve their right to petition the Court for recovery of additional costs and fees incurred after they sign this Decree, including but not limited to their costs and fees incurred in any Decree enforcement process.

## XI.   MODIFICATION

22.   Material modifications of this Decree must be in writing, signed by the Parties, and approved by this Court.   No Party may petition this Court for a modification without having first made a good-faith effort to reach agreement with the other Parties on the terms of such modification.   Non-material modifications to this Decree may be made only upon written agreement of the Parties that shall be filed with the Court.

## XII.   RETENTION OF JURISDICTION

23.   Until termination of this Decree, this Court shall retain jurisdiction over both the subject matter of this Decree and the Parties to this Decree to enforce the terms and conditions of this Decree.

## XIII.  ENFORCEMENT

24.   Enforcement of this Decree shall be undertaken exclusively by the Court that enters this Decree.   No other tribunal shall have jurisdiction over enforcement of this Decree.   Either party may move the Court to enforce the Decree if it believes such action is necessary.

## XIV.   TERMINATION

25.   This Decree shall remain an enforceable order of the Court until the Court determines, after motion by Defendant and any response of Plaintiffs, that all requirements of the Decree have been satisfied, including the payment of the civil penalty and the filing by Defendant of an

application for the incorporation of the emission-limit requirements and conditions set forth in Section V herein into Defendant's Title V permit for Jim Bridger.

26.   Sierra Club and the WOC will voluntarily dismiss their complaint against Defendant with prejudice within ten days after termination of the Decree.

### XIV.   NOTICE OF DECREE

27.   The Parties agree to cooperate in good faith in order to obtain the Court's review and entry of this Decree.

28.   Pursuant to 42 U.S.C. § 7604(c)(3), this Decree will be lodged with the Court and simultaneously presented to the United States for its review and comment for a period of up to 45 days.   After the review period, the Decree may be entered by the Court.   If the Decree is not entered by the Court, the Parties shall retain all rights they had in this litigation before the lodging of the Decree.

29.   The Parties agree to cooperate in good faith in order to obtain expeditiously EPA and United States Attorney General (Department of Justice, or "DOJ") review, and District Court approval.   In the event that DOJ or EPA comments upon the terms of this Decree, the Parties agree to discuss such comments and any revisions to the Decree as may be appropriate.

### XV.   SIGNATORIES

30.   Each undersigned representative of a Party to this Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind such Party to this Decree.

31.   Plaintiffs and Defendant hereby agree not to oppose entry of this Decree by this Court or challenge any provision of this Decree.

## XVI.  COUNTERPARTS

32. This Decree may be signed in counterparts.

THE UNDERSIGNED Parties enter into this Decree and submit it to this Court for approval and entry.

SO ORDERED:

_____
UNITED STATES DISTRICT JUDGE

Dated this _____ day of _____ , 2010.

For Plaintiff Sierra Club:

*Connie J. Wilbert*                                    Date: 4/15/2010

For Plaintiff Wyoming Outdoor Council:

*Laurie K. Milford*                                    Date: 4/15/10

As to form:

*REED ZARS*                                            Date: 4/15/10

Reed Zars
Attorney at Law
910 Kearney Street
Laramie, WY 82070
307-745-7979

As to form:

*JOHN BARTH BY RZ*                                     Date: 4-15-10

John Barth
Attorney at Law
P.O. Box 409
Hygiene, CO 80533
303-744-8868

14

For Defendant PacifiCorp:

_____*[signed] Dean Brockbank*_____ Date: 4-15-10
Dean Brockbank, General Counsel
PacifiCorp Energy
1407 W. North Temple, Suite 320
Salt Lake City, Utah 84121
801-220-4568

As to form:

_____*[signed] John A. Coppede*_____ Date: 4-15-10
John A. Coppede
Hickey & Evans LLP
1800 Carey Avenue, Suite 700
Cheyenne, WY 82003
307-634-1625

As to form:

_____*Robert Troyer by JAC*_____ Date: 4-15-10
Robert Troyer
Hogan & Hartson LLP
1200 17th Street, Suite 1500
Denver, CO 80202
Tel: 303-899-7300

15